

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-22-00165-CV

---

IN THE MATTER OF R.S.

---

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-118013-22

---

Dissenting Memorandum Opinion by Justice Walker

## DISSENTING MEMORANDUM OPINION

I write to respectfully dissent because I believe the evidence in this admittedly difficult case was sufficient to support the trial court's order.

As the majority explains, we are tasked here with determining whether the trial court abused its discretion in finding that community resources could not meet R.S.'s behavioral-health or other special needs without sufficient evidence to support that finding. *See* Tex. Fam. Code Ann. § 54.04013; *In re D.T.*, No. 02-20-00312-CV, 2021 WL 5028769, at *1 (Tex. App.—Fort Worth Oct. 28, 2021, no pet.) (mem. op.). The majority also explains that a trial court does not abuse its discretion if at least some probative and substantive evidence exists to support its decision or if the decision is based on conflicting evidence. *See D.T.*, 2021 WL 5028769 at *1. I believe that enough such evidence existed here to support the trial court's finding.

It is undisputed that R.S. had performed well in detention. It is also undisputed that his psychiatrist, and even the State, recommended that R.S. be sent to a secure facility, in lieu of TJJD, where R.S. could take advantage of certain educational and therapeutic services. However, the trial court was also presented with the following evidence:

- R.S.'s intake officer testified that R.S. had not been successfully rehabilitated after his probation for unlawfully carrying a firearm.

- After he completed his probation, R.S. committed another, more violent offense in which he held a family at gunpoint in a premeditated robbery scheme.

2

- On another occasion, also after he had completed probation, R.S. took the same gun—which he claimed to have purchased from a homeless man—to school and ended up getting shot in the finger. He denied under oath having loaded the gun.

- R.S.'s psychiatrist concluded that R.S. was in a "high-risk category for future violence" due to his aggressive and assaultive history and his limited ability to cope with stress. Further, it was "possible" that R.S.—with time, support, and proper motivation—"may positively respond" to strictly supervised, long-term, and therapeutic treatment in a residential facility.

I would hold that this evidence was sufficient for the trial court to have reasonably found that R.S.'s needs—namely his behavioral needs related to his risk for violence—could not have been met in either of the proposed community facilities. Probation did not reform R.S., and placing R.S. into one of the community facilities would have meant—albeit under more restrictive terms—placing R.S. back on probation. Not only was R.S. not reformed by probation, his criminal and violent behavior had actually escalated to the point that he had held children at gunpoint in a premeditated robbery scheme and had his own finger shot after he took a gun to school. The dubious testimony offered by R.S. to explain how he obtained the gun, and who loaded the gun before he was shot, could have been viewed by the trial court as attempts to deceive and lessen his culpability rather than to take responsibility for his actions. And, R.S.'s psychiatrist had concluded that it would take considerable time, effort, and motivation for R.S. to have had a chance at rehabilitation even within the secure community facility.

The trial court could have reasonably concluded from this evidence that R.S. was so predisposed to violent behavior and had so strikingly failed to be rehabilitated by his first probation, that the proposed community resources could not have met his behavioral needs. For these reasons, I respectfully dissent and would affirm the trial court's order.

/s/ Brian Walker

Brian Walker
Justice

Delivered: December 8, 2022